IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0643-WJM-NYW

CORE PROGRESSION FRANCHISE LLC, a Colorado limited liability company,

    Plaintiff,

v.

CHRIS O'HARE, and
CAO ENTERPRISES, INC., a North Carolina corporation,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EMERGENCY MOTION TO HOLD DEFENDANTS IN CONTEMPT AND MOTION FOR SANCTIONS, AND DISCHARGING ORDER TO SHOW CAUSE

Before the Court is Plaintiff Core Progression Franchise LLC's Emergency Motion to Hold Defendants in Contempt and Motion for Sanctions ("Motion"). (ECF No. 57.) On May 5, 2021, the Court also issued an Order to Show Cause to Defendants Chris O'Hare and CAO Enterprises, Inc. (jointly, "Defendants") as to why the Court should not grant the relief requested in the Motion in the event the Court finds a factual and legal basis to grant said relief. (ECF No. 59.) The Motion is fully briefed (ECF Nos. 63, 65), and Defendants responded to the Order to Show Cause (ECF No. 64).

On May 14, 2021, the Court issued an Interim Order on the Motion, directing the parties to address the issues raised in the Motion and inform the Court as to what remaining issues require a ruling. (ECF No. 67.) On May 24, 2021, the parties filed a Joint Report Re Plaintiff's Emergency Motion ("Joint Report"). (ECF No. 70.)

For the following reasons, the Motion is granted in part and denied in part, and

the Order to Show Cause is discharged.

## I. AUTHORITY FOR SANCTIONS

In the Motion, Plaintiff invokes the Court's inherent powers to impose sanctions. (ECF No. 57 at 4–5.) Federal courts have certain "inherent powers" which are not conferred by rule or statute "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Among these powers is a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *see also Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *3–4 (S.D.N.Y. July 10, 2019) (imposing sanctions pursuant to court's inherent powers). One permissible sanction is an assessment of attorneys' fees, requiring the party that has engaged in misconduct to reimburse the legal fees and costs of the other party. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Such a sanction "must be compensatory rather than punitive in nature." *Id.*

## II. ANALYSIS

Although this dispute is in its relative infancy, the Court has already expended a significant amount of time on, and issued numerous orders in, this case (*see* ECF Nos. 34, 42, 60, 67), and therefore presumes the parties' familiarity with the facts and procedural history. Below, the Court briefly addresses the issues identified in the Joint Report that still require resolution and provides a ruling on each point. The Court then explains its award of sanctions.

**A. Issues to be Resolved**

1. <u>Internet Marketing Profiles</u>

Defendants have taken their Yelp, Facebook, Google My Business,

www.nextdoor.com, and www.mindbodyonline.com profiles offline and will keep them offline as long as the Preliminary Injunction ("PI") is in force. (ECF No. 70 at 2.) Thus, the Court considers this issue resolved.

### 2. Mindbodyonline.com Services

While Defendants were a Core Progression franchise, they downloaded data from Core Progression's customer relationship management ("CRM") system, including client name and membership data. (*Id.*) After leaving the Core Progression system, Defendants began a new CRM account with wwww.mindbodyonline.com to operate Altru Fitness and house their customer data, including the data they downloaded from Core Progression's CRM system.

Plaintiff contends that Defendants' continued possession of its downloaded data is a violation of the PI. (*Id.* at 2–3.) Defendants contend that the PI does not apply to the mindbodyonline.com account because it was not started until after the Franchise Agreement between Plaintiff and Defendants was terminated, and thus does not constitute the Business Records of Plaintiff subject to the PI. (*Id.* at 3.) Despite this position, Defendants have canceled their subscription to wwww.mindbodyonline.com and do not intend to use it while the PI is in force. (*Id.*)

While it may be that the mindbodyonline.com account was created after the termination of the Franchise Agreement, it appears as though there is no dispute that the information in the account includes data taken by Defendants from Core Progression. (*See id.* at 3.) Therefore, to the extent Defendants have not already done so, the Court directs Defendants to return to Plaintiff the original copy, and any additional copies of the information created by or on behalf of Defendants, in the mindbodyonline.com account that were taken from Core Progression's CRM.

3

Defendants are on notice that if evidence comes before the Court that Defendants have retained any copies of this information, they expose themselves to possible future sanctions.

3. <u>Trainerize Profile</u>

Similar to the mindbodyonline.com account, Defendants moved customer information downloaded from Core Progression's CRM into a new digital application hosted by Trainerize. (*Id.*) Plaintiff maintains that Defendants' continued possession of data downloaded from its CRM is a violation of the PI; Plaintiff remains concerned that Defendants will reopen the Trainerize account when the PI lifts and have access to Business Records that should have been returned consistent with the PI. Defendants state that they have returned all of the information they downloaded from Plaintiff's CRM and cancelled the Trainerize account. (*Id.* at 4.) Accordingly, Defendants are "unaware of any further steps they could take to comply with the Court's order on this point" and aver that Plaintiff's concern about Defendants using this information after the PI lifts is "unfounded." (*Id.*)

Like the mindbodyonline.com account, it appears as though there is no dispute that the information in the account includes data taken by Defendants from Core Progression. Therefore, to the extent Defendants have not already done so, the Court directs Defendants to return to Plaintiff copies of the information in the Trainerize account that were taken from Core Progression's CRM to the same extent as the Court has ordered immediately about with regard to the mindbodyonline.com data.

4. <u>Complementary Service Providers</u>

a. *Prevail Physio*

Plaintiff contests the ability of Defendants to sublease the Altru Fitness space to

Complementary Service Providers, such as the physical therapy entity Prevail Physio, under the parameters of the PI. (ECF No. 70 at 4–5.) Plaintiff argues that Defendants are operating "a gym or fitness business" by allowing Prevail Physio to operate out of the former Core Progression space (ECF No. 65 at 4, 7), and that the use of Complementary Service Providers is part of the Core Progression Proprietary System (*id.* at 8). According to Plaintiff, that system is in part defined by the integration of personal training services with ancillary wellness services under one roof. (ECF No. 70 at 4.) Because Plaintiff believes Prevail Physio falls within Core Progression's proprietary system, Plaintiff argues that its continued use of the space violates the PI. (*Id.* at 4–5.)

Defendants contend that Prevail Physio is not a part of Plaintiff's "system," and even if it was, it (presumably here Defendants refer to Prevail Physio) has its own contractual rights under a sublease agreement. (*Id.* at 5.) According to Defendants, the PI did not provide Defendants with the authority to breach the lease with its subtenant, and "any order terminating Prevail Physio's rights under the lease without any notice would likely be a violation of their due process rights." (*Id.*)

The Court finds that by subleasing the Altru Fitness space to Prevail Physio, Defendants have violated the PI's prohibition "from operating any type of gym or fitness business at the location of their Core Progression branded business." (ECF No. 42 at 23.) Among other things, Prevail Physio's website boasts: "At Prevail Physical Therapy and Sports Performance, we are dedicated to optimizing your athletic performance and helping you achieve your wellness goals." *See* https://www.prevailphysio.com/ (last visited June 22, 2021). The "Our Mission" section of Prevail Physio's website states:

5

> After years of being confined to the limits of an insurance-based practice, we believe in helping our patients feel better faster, and then taking this to the next level with preventative care. Whether their goal is to run a marathon, or walk with a friend in the neighborhood, we educate our patients on how to do these activities long-term, and we are here to help when they need a recovery session. Our goal is to be a resource for our patients, taking them from being injured, to thriving with a healthy, active lifestyle.
>
> At Prevail, we provide comprehensive, evidence-based care, utilizing a one-on-one, hands-on approach without the use of aides or assistants. We work with our patients to optimize functional movement and sports performance by determining the root cause of injury. We develop a plan of care to achieve wellness, reduce future injury risk and redefine performance.

*Id.* The Court also observes that the "Contact" section of the website states that it is located "Inside Altru Fitness Studio." *Id.*

The Court concludes that operation of Prevail Physio, a physical therapy business that also helps optimize athletic performance, is sufficiently comparable to a "fitness business" such that it comes within the scope of the PI. The fact that Defendants entered into a sublease with Prevail Physio does not insulate them from their obligations under the PI, as they cannot contract away their obligations under the Court's injunction. Therefore, the Court finds that permitting Prevail Physio to sublease the former Core Progression franchise space violates the PI.

      b.    *Fortify Nutrition*

Plaintiff has asked for all Business Records for Fortify Nutrition, a Complementary Service Provider that offers nutritional services and is owned and operated by O'Hare. (ECF No. 70 at 5.) Defendants contend that Plaintiff has no right to those documents but has nonetheless provided Fortify Nutrition's bank statements to Plaintiff. (*Id.* at 6.) Despite obtaining the bank statements, Plaintiff maintains that

Defendants must produce all Business Records associated with Fortify Nutrition to comply with the PI. While it is not entirely clear, it appears as though Plaintiff's belief that it is entitled to Fortify Nutrition's information is grounded in the idea that Fortify Nutrition, too, is part of Core Progression's proprietary system. (*Id.* at 4–5.)

The Court finds that Plaintiff has not shown that it is entitled to all of Fortify Nutrition's Business Records, as defined in the PI. (*See* ECF No. 42 at 24.) Defendants' provision of bank statements—at this point in the litigation—is sufficient, and the Court considers this issue resolved.

        c.    *Clean Eatz*

According to the Joint Report, Defendants have produced evidence of their efforts to remove Clean Eatz from their former Core Progression fitness center. (ECF No. 70 at 6.) Thus, the Court considers this issue resolved.

    5.    <u>Altru Fitness Website</u>

Plaintiff requested that Defendants remove any images that displayed Plaintiff's trade dress from the Altru Fitness website, www.altrufitnessapexnc.com. (*Id.* at 6.) Defendants have agreed to take the Altru Fitness website offline and keep it offline while the PI is in force. Thus, the Court considers this issue resolved.

**B.    Imposition of Sanctions**

Plaintiff requests that the Court award its attorneys' fees in the amount of $15,750, which includes its fees incurred in preparing the motion and reply brief. (*Id.* at 6.) For support, Plaintiff argues it incurred significant fees to seek compliance with the PI, issued on April 1, 2021 (ECF No. 42), and continues to receive business records and information from Defendants over six weeks after they were due. (*Id.*)

Plaintiff also submits the Supplemental Declaration of Filemon Carrillo In Support

7

of Core Progression LLC's Reply to Defendants' Response to Emergency Motion to Hold Defendants in Contempt and Motion for Sanctions. (ECF No. 65-25.) Carrillo is an attorney for Plaintiff and declares that he spent approximately 15 hours reviewing the file and drafting the Motion and associated documents and spent approximately 20 hours reviewing the opposition and drafting the reply brief. (*Id.* ¶¶ 1, 5–6.) He charges $450 per hour. (*Id.* ¶ 4.)

Defendants contend that they have taken all reasonable steps to comply with the PI and have provided everything in their possession to Plaintiff with each new information request. (*Id.* at 7.) Defendants argue that Plaintiff should not be awarded fees for filing the Motion when it could have requested the information it believed was subject to the PI, and Defendants would have provided it, within reason. In particular, Defendants refer to two occasions on which O'Hare attempted to confer with Plaintiff and determine what information it believed remained outstanding. (*Id.*) Instead of responding, Plaintiff filed the Motion. Defendants do not specifically object to Carrillo's hourly rate or the number of hours spent on the Motion and reply.

The Court has weighed both parties' positions and has carefully considered the work they put in to reach the positions stated in the Joint Report. As the Court stated in the Interim Order, there were merits and problems with both parties' positions on various issues. (*See* ECF No. 67 at 3.) And, as the Court has described in this Order, to a degree, merits and problems on both sides remain. However, the Court is mindful that O'Hare has admitted that he permitted two of CAO's former trainers to conduct their own independent training sessions at the Core Progression franchise location. (ECF No. 63-1 ¶ 19.) He did so despite being "unsure whether a sublease to an independent

8

trainer would fall within the Order." (*Id.*)  However, by April 21, 2021, O'Hare states that he realized these actions could potentially fall within the scope of the Order, and he informed the trainers they could not continue to use the space. (*Id.* ¶ 21.)  Thus, while even O'Hare impliedly concedes he may have violated the PI by offering training sessions through independent trainers in the Altru Fitness space, he ceased such actions and represents that "no further training sessions will take place." (ECF No. 63 at 7.)  Nonetheless, the sessions occurred, and the Court cannot ignore that fact.

In addition, following the issuance of the PI, Defendants continued to use Core Progression trademarks on various websites such as Facebook, Yelp, and Google My Business.  (*See* ECF Nos. 57-15, 57-17 at 2, 57-18 at 4.)  Defendants stipulated that they would cease to use Plaintiff's marks at the evidentiary hearing, and these stipulations were incorporated in the PI.  (ECF No. 42 at 24–25.)  Again, though this issue appears to be resolved now, the Court cannot ignore the fact that Defendants continued using Plaintiff's marks after the PI issued.

However, the Court also notes Defendants' efforts to comply with the PI and respond to Plaintiff's continued requests for information.  The numerous actions Defendants have taken, explained in the response and Joint Report, demonstrate as much.  (*See* ECF Nos. 63, 70.)  Accordingly, the Court will exercise its inherent authority to award sanctions in Plaintiff's favor but will not award the entire amount Plaintiff requests.  Instead, the Court elects to award Plaintiff approximately half of its request: $8,000 in attorneys' fees incurred in bringing the Motion and reply brief.

\*\*\*

The Court considers this Order to be the end of its consideration of the parties'

compliance with the PI.  The Tenth Circuit has under advisement Defendants' appeal of the PI and will ultimately determine its continuing viability, scope and effect.  Until that time, the parties should proceed with this litigation and endeavor to settle their disputes out of court to the maximum extent possible because, as the Court advised in the Interim Order, "the Court will not intervene to mediate every squabble between the parties while the Tenth Circuit considers Defendants' appeal of the Preliminary Injunction."  (ECF No. 67 at 7.)

### III. CONCLUSION

For the reasons explained above, the Court ORDERS:

1. Plaintiff Core Progression Franchise LLC's Emergency Motion to Hold Defendants in Contempt and Motion for Sanctions (ECF No. 57) is GRANTED IN PART AND DENIED IN PART as stated above;

2. The Court's Order to Show Cause as to why the Court should not grant the relief requested in the Motion (ECF No. 59) is DISCHARGED; and

3. Defendants shall pay Plaintiff an award of sanctions in the amount of $8,000 by no later than **July 31, 2021**.

Dated this 23rd day of June, 2021.

BY THE COURT:

William J. Martinez
United States District Judge