IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0643-WJM-NYW

CORE PROGRESSION FRANCHISE LLC, a Colorado limited liability company,

    Plaintiff,

v.

CHRIS O'HARE, and
CAO ENTERPRISES, INC., a North Carolina corporation,

    Defendants.

## ORDER ON MOTIONS CONCERNING DEFENDANTS' COUNTERCLAIMS

Before the Court are the following motions[1]:

1.    Defendants Chris O'Hare and CAO Enterprises, Inc. (jointly, "Defendants") Motion for Leave to Withdraw Counterclaims ("Motion to Withdraw") (ECF No. 93), to which Plaintiff Core Progression Franchise LLC filed a response in opposition (ECF No. 98); and

2.    Plaintiff's Motion For An Order Finding That Defendants Waived the Right to Arbitrate Their Counterclaims Or, In the Alternative, Staying Defendants' Arbitration ("Motion for Waiver") (ECF No. 99), which is fully briefed (ECF Nos. 100, 102).

The Court has entered numerous orders in this case and incorporates the factual background here. (*See, e.g.*, ECF Nos. 34, 42, 79.) For the following reasons, the

---

[1] In their briefs, the parties include numerous lengthy footnotes in small font. In future briefing, the Court directs the parties to be circumspect in their use of footnotes, lest the Court strike future briefs for exceeding the page limits by including an excess amount of text in the footnotes.

Motion to Withdraw is granted, and the Motion for Waiver is denied.

## I. PROCEDURAL BACKGROUND

On December 21, 2020, Defendants filed a Demand for Arbitration with JAMS - Denver, naming Jonathan Cerf and Core Progression Franchise LLC (jointly, "Respondents") as respondents and invoking the dispute resolution section of the Franchise Agreement. (ECF Nos. 19-2, 93-1.) Defendants' claims against Respondents include fraudulent misrepresentation, fraudulent nondisclosure, fraudulent concealment, deceptive trade practices pursuant to Colorado Revised Statutes ("C.R.S.") § 6-1-101 *et seq.*, negligence, negligent misrepresentation, civil theft pursuant to C.R.S. § 18-4-405, and conversion. (ECF No. 93-1.)

On March 3, 2021, Plaintiff filed its Complaint in this Court against Defendants, bringing claims for breach of contract and trademark infringement, and requesting that the Court enter a temporary restraining order and preliminary and permanent injunctive relief, and award incidental damages and attorneys' fees and costs. (ECF No. 1.) On March 26, 2021, the Court conducted an evidentiary hearing on Plaintiff's motion for a preliminary injunction. (ECF No. 33.) The Court issued an Amended Order Granting Plaintiff's Construed Motion for Preliminary Injunction (ECF No. 42), which Defendants appealed on April 22, 2021 (ECF No. 46). As of the date of this Order, that appeal remains pending in the Tenth Circuit Court of Appeals.

On May 11, 2021, Defendants answered the Complaint and filed counterclaims against Plaintiff, which included claims for fraudulent misrepresentation, fraudulent nondisclosure, fraudulent concealment, deceptive trade practices pursuant to C.R.S. § 6-1-101 *et seq.*, negligence, negligent misrepresentation, civil theft pursuant to C.R.S. §

18-4-405, and conversion.  (ECF No. 66.)

On May 27, 2021, United States Magistrate Judge Nina Y. Wang entered the Scheduling Order in this case.  (ECF No. 72.)  Judge Wang set the discovery cut-off for January 14, 2022, the dispositive motion deadline for February 14, 2022, and a final pretrial conference for April 6, 2022.  (*Id.*)

On November 8, 2021, Judge Wang extended the scheduling deadlines as follows: the deadline to designate affirmative experts is January 11, 2022; the deadline to designate rebuttal experts is February 11, 2022; the discovery deadline is March 15, 2022; the dispositive motions deadline is April 15, 2022; and the final pretrial conference will be held on June 8, 2022.  (ECF No. 107.)  No trial date has been set.

On June 1, 2021, Plaintiff answered the counterclaims.  (ECF No. 73.)  In the interim, Defendants' original counsel withdrew, and their current counsel, David Meretta, entered his appearance.  (ECF Nos. 77, 78.)

On July 20, 2021, Plaintiff filed its First Amended Complaint ("FAC"), bringing claims against Defendants for breach of contract, trademark infringement under 15 U.S.C. § 1114, trade dress infringement under 15 U.S.C. § 1125, unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement, trade secret misappropriation under 18 U.S.C. § 1836, trade secret misappropriation under C.R.S. § 7-74-101 *et seq.*, and civil conspiracy.  (ECF No. 91.)  Plaintiff also requests that the Court enter preliminary and permanent injunctive relief, award compensatory, consequential and special damages, award exemplary and punitive damages against Defendants for Counts Six, Seven, and Eight, and award reasonable attorneys' fees and expenses.  (*Id.*)

On August 2, 2021, Defendants answered the FAC. (ECF No. 92.) Also on August 2, 2021, Defendants filed the Motion to Withdraw. (ECF No. 93.) On August 10, 2021, Plaintiff filed an FAC which included exhibits. (ECF No. 97.) On August 23, 2021, Plaintiff filed the Motion for Waiver. (ECF No. 99.)

On September 21, 2021, Defendants filed their Motion to Compel Arbitration (ECF No. 101), which the Court will address by way of separate Order.

## II. LEGAL STANDARD

Federal policy favors arbitration agreements and requires a court to rigorously enforce them. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). However, like any other contractual right, a party can waive the right to arbitration. *Reid Burton Const., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980).

The Tenth Circuit has recognized two forms of waiver: (1) intentional relinquishment or abandonment of the right to arbitration, and (2) conduct in litigation which forecloses the right to arbitration. *BOSC, Inc. v. Bd. of Cnty. Comm'rs of the Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017). Courts have "no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends on the facts of each case and usually calls for a finding by the trier of the facts." *Reid Burton*, 614 F.2d at 702. A court should resolve any doubts in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Due to the strong policy favoring arbitration, a party asserting waiver of arbitration has a "heavy" burden of proof.

4

*Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988).

The first form of waiver is based on a party's intent to waive the right to arbitration.  *See Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 773 (10th Cir. 2010).  This type of waiver is similar to waiver used in the criminal-law context, where a waiver is an "intentional relinquishment or abandonment of a known right."  *Id.* (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).  However, *Reid Burton* and *Peterson* "hardly limit the concept of waiver to intentional relinquishment of a known right."  *Id.*  Rather, waiver may be intentional *or* negligent.  *Id.* (citing *Reid Burton*, 614 F.2d at 701).

The second form of waiver occurs when a party's conduct over the course of litigation forecloses his right to later change course and elect to pursue arbitration of the dispute.  *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016).  This type of waiver is more common and can occur regardless of intent.  *Id.*  The question of waiver "depends upon the facts of each case."  *Reid Burton*, 614 F.2d at 702.

The Tenth Circuit examines the following factors to determine whether a party has waived the right to arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [*e.g.*, taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

5

*Hill*, 603 F.3d at 772–73 (quoting *Reid Burton*, 614 F2d at 702). These factors are not exclusive or exhaustive, nor should courts apply them mechanically. *Id.* at 773. Instead, they "reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Id.* The overarching consideration is "whether the party now seeking arbitration is improperly manipulating the judicial process." *BOSC*, 853 F.3d at 1174 (quoting *Hill*, 603 F.3d at 773). This may occur when litigation has proceeded too far, so that switching to arbitration would create "significant inefficiencies in the use of both the court and arbitrators or could prejudice opposing parties." *Cox*, 835 F.3d at 1205.

### III. ANALYSIS

**A.    Defendants Have Not Waived Their Right to Arbitration**

For the following reasons, the Court finds that, while Defendants' actions in navigating the arbitration and this litigation could have been more prudent, they have not waived the right to arbitrate their counterclaims. Therefore, the Court will grant Defendants' Motion to Withdraw their counterclaims and deny Plaintiff's Motion for Waiver.

First, while Plaintiff cites the legal standard for intentional waiver, it does not develop any meaningful argument that Defendants intentionally waived their right to arbitrate their counterclaims. (ECF No. 99 at 3, 4.) Rather, Plaintiff focuses its arguments on whether Defendants' conduct in this case demonstrates a waiver of the right to arbitrate. (*Id.* at 4–10.) Therefore, to the extent Plaintiff invokes any intentional waiver argument, the Court finds such argument without merit.

Next, the Court addresses Plaintiff's argument that Defendants have waived their right to arbitrate the counterclaims through their conduct in this litigation. The parties do

6

not dispute that a valid agreement to arbitrate exists in the Franchise Agreement (ECF No. 19-2), so the Court begins with the "strong presumption" that the counterclaims are arbitrable, and that any doubts about the scope of arbitrable issues should be resolved in favor of arbitration.  See Cox, 835 F.3d at 1201.

Regarding the first *Peterson* factor, the Court addresses whether Defendants' actions are inconsistent with the right to arbitration.  This factor requires consideration of the totality of conduct.  See *Hill*, 603 F.3d at 766.

Plaintiff argues that Defendants are overly reliant on the fact that they filed the Demand for Arbitration in December 2020, noting that the arbitration proceedings: 1) had gone nowhere in the eight months that had passed as of the time of the filing; 2) those proceedings are on hold until a dispute about the procedure for selecting an arbitrator is decided; and 3) the procedural matter pending before JAMS was placed on administrative hold for Defendants' failure to pay fees until only recently.  (ECF No. 99 at 4.)  Additionally, Plaintiff argues that Defendants have acted as if their claims would be decided by this Court because both parties addressed the scope of the arbitration provision in the Franchise Agreement at the preliminary injunction hearing.  (*Id.* at 5.) Plaintiff also contends that Defendants waived arbitration when they filed the counterclaims, which are identical to the claims in the Demand for Arbitration.  (*Id.*)

Further, Plaintiff argues that Defendants' affirmative defenses in this case are predicated on the same allegations of fraud in the counterclaims, and that Defendants plan to present the substance of their claims for fraud and breach of contract against Plaintiff while simultaneously arguing before this Court that they are subject to arbitration.  (*Id.* at 6.)  According to Plaintiff, allowing Defendants to present the same

7

claims to a jury that they intend to arbitrate not only results in a waste of judicial resources but also exemplifies manipulation of the judicial process.  (*Id.*)

In response, Defendants raise several issues.  Defendants note that Cerf is not party to this action; thus, should the Court agree with Plaintiff and not permit withdrawal of the counterclaims, Defendants would be required to bifurcate their intertwined claims by litigating against Plaintiff here while arbitrating against Cerf over substantially identical conduct.  (ECF No. 100 at 1.)  Moreover, Defendants' claims against Respondents are one of five sets of parallel demands that were concurrently filed against them by current and former Core Progression franchisees in December 2020.  (*Id.* at 2.)  In Defendants' view, requiring Defendants to litigate their counterclaims against Core Progression here while nine sets of similar claims filed in arbitration proceed against Respondents makes no sense.  (*Id.*)  Defendants also emphasize that their actions have largely been consistent with an intent to arbitrate, noting that they demanded arbitration against Respondents approximately one year ago.  (*Id.* at 7.)

In the Court's view, this factor represents Plaintiff's strongest argument that Defendants waived the right to arbitration.  It is undeniable—and still not entirely clear for what purpose—that Defendants filed claims in this Court after they had filed them in arbitration.  However, the Court agrees with Defendants that, despite exhibiting some behavior inconsistent with their right to arbitration, they have also undertaken conduct which is consistent with the right to arbitration, such as filing the Demand for Arbitration in December 2020 (before this lawsuit was filed), as well as moving to withdraw their counterclaims upon filing an answer to the FAC.  Moreover, Defendants explain that contrary to Plaintiff's representations, the arbitration proceedings are actively moving

forward following an Order from JAMS dated September 1, 2021.  (ECF No. 100 at 3.)  Therefore, under this factor, Defendants' conduct only somewhat weighs in favor of waiver.

Like Plaintiff, the Court considers factors two and five together.  (ECF No. 99 at 7.)  The second factor considers whether the party opposing waiver has substantially invoked the "litigation machinery."  *BOSC*, 853 F.3d at 1174.  Under this factor, the critical question is what was happening in the litigation between the time the claim was filed and arbitration was demanded.  *Hill*, 603 F.3d at 775.  Regarding the fifth factor, the Court examines whether "important intervening steps" have taken place.

With respect to these factors, Plaintiff again argues that the arbitration has not proceeded very far, but this argument is undermined by Defendants having pointed out that as of September 1, 2021, arbitration has proceeded.  (ECF No. 99 at 6; ECF No. 100 at 3.)  Plaintiff also notes that Defendants identified various categories of damages in the proposed scheduling order and discussed discovery procedures at the scheduling conference.  (*Id.* at 7.)  Plaintiff highlights the fact that the parties have engaged in discovery, with Defendants serving document requests, interrogatories, and requests for admissions.  (*Id.*)  The parties have also exchanged initial disclosures and made document productions.  (*Id.*)  Finally, Plaintiff points out that Defendants appealed the Court's Order entering a preliminary injunction and asked this Court and the Tenth Circuit to stay enforcement of the preliminary injunction.  (*Id.*)

While it is true that the parties have engaged in discovery, the Court is not persuaded that this is a substantial utilization of the judicial process.  Moreover, given the number of orders this Court has entered in this case, it might appear at first as if

9

much progress has been made in this litigation.  However, despite the number of orders issued, that state of affairs reflects the hectic schedule surrounding the preliminary injunction phase of the case, which necessitated an interim order and the final order granting the preliminary injunction, as well as some orders imposing sanctions for Defendants' violations of the preliminary injunction (*see, e.g.*, ECF Nos. 34, 42, 59, 60, 67, 79).  Thus, despite appearances, all the Court has done thus far is focus on whether Plaintiff was entitled to *preliminary* injunctive relief; the Court has not undertaken consideration of the merits of Plaintiff's claims or of Defendants' counterclaims.  This is particularly true given the numerous additional claims Plaintiff alleges in the FAC, which it filed after the Court entered the preliminary injunction.  (ECF Nos. 42, 91.)  Insofar as substantive consideration and adjudication of this matter on its merits is concerned, while not in its infancy, this case remains in its early stages.

Specifically, discovery is not complete, as the parties must designate affirmative experts by January 11, 2022, and rebuttal experts by February 11, 2022, and the discovery deadline of March 15, 2022 has not yet passed.  (ECF No. 107.)  Moreover, dispositive motions have not been filed, no final pretrial order has been issued, and a trial date has not been set.  *See Strong v. Davidson*, 734 F. App'x 578, 583 (10th Cir. May 16, 2018) (no waiver when party only "partially invoked" litigation machinery because dispute was at "front end" of litigation and discovery was still open); *Patten Grading Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 207 (4th Cir. 2004) (no waiver when parties had not substantially invoked litigation despite exchange of written discovery, including interrogatories and requests for production, participation in court-ordered mediation, and reopening of discovery for another month).  In addition, to the

10

extent relevant, the parties may use whatever discovery obtained here in the arbitration proceedings.  *See Patten Grading*, 380 F.3d at 207 (no waiver without evidence that documents produced in discovery would be unavailable in arbitration or that other party had gained strategic advantage through discovery requests).

With respect to Plaintiff's argument that Defendants have invoked the litigation machinery by appealing the preliminary injunction order and seeking a stay of enforcement both here and in the Tenth Circuit, the Court finds this argument unavailing.  *Plaintiff* was the party which decided to seek injunctive relief in federal court.  Accordingly, to defend itself, Defendants were forced to litigate the preliminary injunction in the forum of Plaintiff's choosing.  To hold Defendants' decision to appeal the preliminary injunction and seek a stay of its enforcement against them would allow Plaintiff to use its decision to seek relief in federal court as both a sword and shield against Defendants.  This the Court will not do.  Moreover, the Court cannot find a waiver of the right to arbitrate on this basis when the very issues the parties are litigating in federal court involve issues excluded from the Franchise Agreement's arbitration requirement.  Therefore, the Court finds that the second and fifth factors only very slightly support waiver.

Like the parties, the Court examines the third and fourth factors together.  Regarding the third factor, the Court considers whether a party either requested arbitration close to the trial date or delayed for a long period before seeking a stay.  Under the fourth factor, the Court analyzes whether a party seeking arbitration filed a counterclaim without asking for a stay of the proceedings.

Courts typically do not find waiver unless the trial date is imminently approaching,

even if a delay of several months exists between filing suit and demanding arbitration. *See, e.g.*, *BOSC*, 853 F.3d at 1175 (no waiver for three-month delay when no trial date near); *Patten Grading*, 380 F.3d at 203, 205 (no waiver for eight-month delay and only four-month delay after party learned of arbitration agreement through discovery); *J&S Const. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 809–10 (1st Cir. 1975) (no waiver for 13-month delay). Here, no trial date has been set, much less is trial imminently approaching. Moreover, Plaintiff filed its FAC on July 20, 2021. (ECF No. 91.) Defendants moved to withdraw their counterclaims on August 2, 2021, the same day they answered the FAC. (ECF Nos. 92, 93.) Therefore, although the counterclaims were originally filed in May 2021, following Plaintiff's decision to file the FAC, Defendants quickly decided to withdraw the counterclaims and did not delay doing so once they answered the FAC. Therefore, the third and fourth factors do not favor a finding of waiver.

Finally, the Court considers whether any purported delay in seeking arbitration "affected, misled, or prejudiced" Plaintiff. In these circumstances, prejudice is described as "inherent unfairness—in terms of delay, expense, or damage to a party's legal position" which occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. *Cox*, 835 F.3d at 1208–09 (internal quotation marks omitted); *see Strong*, 734 F. App'x at 583 (finding prejudice because second arbitration would add further delay to case that "dragged on for years" and would require parties to incur over $12,000 in additional fees that had already been paid in first arbitration). The party opposing waiver must also show that its prejudice is significant. *Hill*, 603 F. 3d at 775 (party failed to show how he was burdened "significantly" more than he would have

been had dispute gone to arbitration at outset); *Cox*, 835 F. 3d at 1206 (similar).

Plaintiff contends that Defendants are asking this Court to let them try their defenses (fraud and a tacit request for recission of the Franchise Agreement) to a jury in federal court and then pursue their counterclaims in arbitration. (ECF No. 99 at 8.) According to Plaintiff, to allow this approach would "significantly prejudice[] [Plaintiff] if Defendants are allowed to take two bites at the apple." (*Id.*)

Despite Plaintiff's arguments, the Court is unconvinced that it has shown the type of prejudice required to demonstrate waiver. As Defendants point out, Plaintiff has not shown that it has suffered substantially more prejudice from the discovery that has occurred in federal court than it would have suffered had the dispute gone to arbitration originally. *Hill*, 603 F.3d at 776. Additionally, it seems highly unlikely that Plaintiff has begun substantial—if any—trial preparation in advance of a trial date which has not yet been set. And as a more general matter, Plaintiff has not shown how arbitration would cause significantly more prejudice than litigation, particularly since the Franchise Agreement's arbitration clause specifically provides for arbitration of the types of claims Defendants have brought as counterclaims here. (*See* ECF No. 100 at 10 n.8.) Therefore, the Court finds that this factor does not favor a finding of waiver.

A few other considerations guide the Court's resolution of the motions at issue. An "important consideration" in this litigation is the "maintenance of the combined efficiency of the public and private dispute-resolution systems." *Hill*, 603 F.3d at 774. The Court agrees with Defendants that allowing the withdrawal of the counterclaims furthers the interests of judicial economy; this approach allows Defendants to pursue their substantially identical claims against Respondents in parallel arbitration with the

13

demands presented by other Core Progression franchisees.  It simply does not promote "combined efficiency" to require litigation of these claims while Defendants arbitrate their overlapping claims against Cerf.

Additionally, Plaintiff states in its Motion for Waiver that "[a] final pretrial conference is set for April 2022, with a jury trial to proceed presumably shortly thereafter."  (ECF No. 99 at 9.)  Plaintiff's statement reveals its ignorance of the congested nature of this Court's docket.  Rather than proceeding "shortly" following the final pretrial conference, which has been reset for June 8, 2022 (ECF No. 107), given the Court's current docket, the earliest trial date would likely be in the fourth quarter of 2022.  Therefore, consistent with the Court's analysis above, those factors taking the trial date into account simply militate against a finding of waiver in this case.

Based on the foregoing, the Court concludes that Defendants have not waived their right to arbitrate the counterclaims.

## B.  The Court Will Not Stay Arbitration Pending Resolution of This Case

Finally the Court addresses Plaintiff's request that in the event the Court were to find that Defendants have not waived a right to arbitrate their counterclaims, the Court should in the alternative stay the arbitration involving O'Hare until the merits of the FAC are decided by a jury and the Court.  (ECF No. 99 at 2–3, 8–9.)  Plaintiff relies on the purported glacial progress of the arbitration proceedings thus far and its presumption that this case will go to trial shortly after the final pretrial conference.  Plaintiff contends that "[a]s a result, if both this action on the FAC and a separate arbitration on the Counterclaims go forward, the result would be a waste of judicial and private resources."  (*Id.* at 9.)  "Accordingly, the Court should stay the proceedings on Defendants' arbitration pending resolution of this Action."  (*Id.*)

14

The Court has already addressed the main reasons Plaintiff relies on in seeking a stay above and will not repeat its reasoning. To the extent Plaintiff argues that Defendants waived the right to arbitrate by filing an answer which did not invoke the right to arbitrate, its argument is without merit. (ECF No. 99 at 8; ECF No. 100 at 10.) The Tenth Circuit does not require a party to seek arbitration in its answer. *See Hill*, 603 F.3d at 771 (party was not required by Rule 8(c)(1) to demand arbitration in its answer).

For the reasons already explained, particularly given the relatively early stages of this litigation, the Court finds that staying the arbitration would not be in the interests of judicial economy or the parties themselves. In fact, as the Court understands it, it is possible that staying *this action* may result in greater judicial economy because resolution of Defendants' claims in Defendants' favor in arbitration could result in a finding that the Franchise Agreement is void. If such a determination were reached in arbitration, it could have a significant impact on Plaintiff's ability to prevail on the claims alleged in the FAC. For these reasons, the Court denies Plaintiff's request to stay arbitration pending the outcome of the instant action.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS:

1. Defendants' Motion for Leave to Withdraw Counterclaims (ECF No. 93) is GRANTED;

2. Plaintiff's Motion For An Order Finding That Defendants Waived the Right to Arbitrate Their Counterclaims Or, In the Alternative, Staying Defendants' Arbitration (ECF No. 99) is DENIED; and

3. Defendants' counterclaims (ECF No. 66) are DEEMED WITHDRAWN.

Dated this 29th day of December, 2021.

BY THE COURT:

William J. Martinez
United States District Judge