**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0643-WJM-NYW

CORE PROGRESSION FRANCHISE LLC, a Colorado limited liability company,

     Plaintiff,

v.

CHRIS O'HARE, and
CAO ENTERPRISES, INC., a North Carolina corporation,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

---

Before the Court is Defendants Chris O'Hare and CAO Enterprises, Inc.'s (jointly, "Defendants") Motion to Compel Arbitration ("Motion") (ECF No. 101), which is fully briefed (ECF Nos. 103, 104).

The Court has entered numerous orders in this case and incorporates the factual background herein. (*See, e.g.*, ECF Nos. 34, 42, 79.) Additionally, the Court set forth the relevant procedural background and legal standards in its most recent Order on Motions Concerning Defendants' Counterclaims ("Order on Counterclaims") and incorporates those sections herein. (*See* ECF No. 108.) For the following reasons, the Motion is granted in part and denied in part, to the extent set forth below.

**I. FRANCHISE AGREEMENT**

The parties' Franchise Agreement includes certain relevant provisions in Section 20, which governs Dispute Resolution. (ECF No. 19-2.)

Section 20.2 provides:

> Prior to mediation, and before commencing any legal action against Franchisor or Affiliates regarding any such claim or dispute, Franchisee must submit a notice to Franchisor, which specifies the precise nature and grounds of such claim or dispute.  Franchisor shall not be required to first attempt to mediate nor arbitrate a controversy, dispute or claim against Franchisee as described in this Section 20 if such controversy, dispute or claim concerns an allegation by Franchisor that Franchisee has violated (or threaten to violate, or pose an imminent risk of violating): (a) any of Franchisor's protected intellectual property rights in the Marks, the System, or in any of Franchisor's trade secrets or confidential information; (b) any claims pertaining to or arising out of any warranty issued; (c) securing injunctive relief or specific performance under this Franchise Agreement; or (d) any of the restrictive covenants contained in this Franchise Agreement.

(*Id.* at 50.)

In Section 20.4, the Franchise Agreement provides:

> To protect from violations that would cause immediate loss and damages or irreparable harm, Franchisor, without first seeking mediation or arbitration, shall have the right to seek from a state or federal court near Franchisor's headquarters (currently in Northglenn, Colorado):
>
> > (a) injunctive relief and any related incidental damages;
> >
> > (b) an action for disputes or claims related to or based on any of Franchisor's protected intellectual property rights in the Marks or the or restrictive covenants;
> >
> > (c) issues related to the disclosure or misuse of Confidential Information or Trade Secrets; and
> >
> > (d) any claims pertaining to or arising out of any warranty issued.

(*Id.* at 51.)

2

## II. ANALYSIS

### A.    The Arbitrable Claims

Defendants move to compel arbitration of Plaintiff Core Progression Franchise LLC's claims alleged in the First Amended Complaint ("FAC") (ECF No. 91), which include breach of contract, trademark infringement under 15 U.S.C. § 1114, trade dress infringement under 15 U.S.C. § 1125, unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement, trade secret misappropriation under 18 U.S.C. § 1836, trade secret misappropriation under C.R.S. § 7-74-101 *et seq.*, and civil conspiracy (ECF No. 101 at 1).  Defendants also move to compel arbitration of Plaintiff's requested award of "compensatory, consequential and special damages" and "exemplary and punitive damages."  (*Id.*)  Defendants contend that these claims do not fall within Section 20.4 of the Franchise Agreement, which allows Plaintiff, as franchisor, to pursue certain limited actions in litigation rather than arbitration.  (*Id.*)

In response, Plaintiff contends that except for its claim for breach of contract for failure to pay royalties, all of its claims in the FAC fall within Section 20.2's express exemption from the requirement to arbitrate.  (ECF No. 103 at 1.)

Upon review of Plaintiff's claims in the FAC, as well as Sections 20.2 and 20.4 of the Franchise Agreement, the Court agrees with Plaintiff.  All of the claims other than the breach of contract claim for failure to pay royalties address issues expressly exempted from arbitration in Section 20.2, including claims related to Plaintiff's intellectual property rights in the Marks, System, or trade secrets of confidential information, the warranty, injunctive relief, or restrictive covenants.  (ECF No. 19-2 at 50.)  Any argument Defendants advance that Section 20.4 somehow excludes these claims from litigation here is unavailing, and frankly—given the plain language of

Section 20.2—borders on disingenuous.

Therefore, the Court proceeds to consider whether Defendants have waived their right to compel arbitration of Plaintiff's breach of contract claim for failure to pay royalties.

**B.      Whether Defendants Waived the Right to Arbitrate**

The Court engaged in a thorough analysis of whether Defendants waived the right to arbitrate their counterclaims in its Order on Counterclaims.  (ECF No. 108.)  The Court incorporates by reference the reasoning in the Order on Counterclaims and for the reasons explained therein reaches the same conclusion here.  Namely, the Court concludes that Defendants have not waived the right to compel arbitration of Plaintiff's breach of contract claim for failure to pay royalties.

The Court will very briefly explain its findings.  The FAC was filed July 20, 2021 (ECF No. 91), and Defendants moved to compel arbitration on September 21, 2021 (ECF No. 101).  A two-month delay in moving to compel arbitration does not countenance a finding that Defendants waived the right to arbitrate and does not demonstrate actions "inconsistent with the right to arbitrate."  *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772–73 (10th Cir. 2010).  The Court explained in great detail in the Order on Counterclaims why the case has not progressed to such a point that arbitration of arbitrable claims would be inappropriate, why any intervening steps that have taken place in this case do not render arbitration inappropriate, and that Plaintiff will not suffer prejudice by arbitrating arbitrable claims.  (*See* ECF No. 108.)

Therefore, the Court will compel arbitration of Plaintiff's claim for breach of contract for failure to pay royalties.  The remainder of Plaintiff's claims will be litigated here.

C.      **Stay**

Finally, the Court will consider on its own motion whether a stay of this case is appropriate pending the outcome of the parties' arbitration.  The Court notes that Defendants request that this case be stayed but make no substantive argument in support.  (ECF No. 101 at 8.)

Courts have the inherent power to stay proceedings to manage their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  The decision whether to stay a case rests firmly within the sound discretion of a court. *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003).  In determining whether to stay a litigation, a court should consider: (1) judicial efficiency as measured by the stage of the civil litigation and the stay's potential to simplify the issues; (2) the harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and (3) the hardship and inequity to the moving party if the stay is denied.  *Tigercat Int'l, Inc. v. Caterpillar Inc.*, 2018 WL 2049816, at *2 n.3 (D. Del. May 2, 2018) (citing *Landis*, 299 U.S. at 254–55).

For the following reasons, the Court finds that a stay of this case is warranted.  It is undisputed that Defendants' claims in arbitration may substantially overlap with their affirmative defenses in this case.  Moreover, as the Court observed in its Order on Counterclaims, it appears as though resolution of Defendants' claims in arbitration may significantly simplify the issues in this litigation.  Specifically, should the arbitrator find in Defendants' favor, it may result in a finding that the Franchise Agreement is void.  If such a determination were reached in arbitration, it could have a significant impact on

Plaintiff's ability to prevail on the claims alleged in the FAC.  In the Court's view, it makes more sense to understand the outcome of the arbitration proceedings and how they affect this case than for the two proceedings to continue simultaneously.  Such an approach also mitigates any risk of inconsistent findings in arbitration and in this case. The Court finds that Plaintiff will not suffer harm or unfair prejudice as a result of the stay because the preliminary injunction remains in place, and Plaintiff may ultimately litigate its claims in this Court.

Therefore, the Court will stay this case at least through June 30, 2022, when it will assess whether a continuation of the stay is warranted.

### III. CONCLUSION

For the reasons explained above, the Court ORDERS:

1. Defendants' Motion to Compel Arbitration (ECF No. 101) is GRANTED IN PART AND DENIED IN PART, to the extent stated above;

2. Upon the Court's motion, this case is STAYED through at least **June 30, 2022**;

3. The parties are DIRECTED to file a joint status report on **June 15, 2022** which explains the current status of the arbitration proceeding, as well as the parties' positions on whether a continuation of the stay is appropriate; and

4. This action is ADMINISTRATIVELY CLOSED until further Order of the Court.

Dated this 29th day of December, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge